```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

--------------------------------x
SIMONIZ USA, INC.,              :
                                :
        Plaintiff,              :
                                :  Case No. 3:10CV570(AWT)
    v.                          :
                                :
TV PRODUCTS USA, INC.,          :
                                :
        Defendant.              :
--------------------------------x

### RULING ON MOTION TO DISMISS

The plaintiff, Simoniz USA, Inc. ("Simoniz"), brings this action against the defendant, TV Products USA, Inc. ("TV Products"), claiming trademark infringement (Count I), unfair competition (Count II), unfair trade practices (Count III) and copyright infringement (Count IV). TV Products has moved to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons set forth below, the motion is being granted.

**I.   FACTUAL BACKGROUND**

Simoniz is a Connecticut corporation with its principal place of business in Bolton, Connecticut. TV Products is a New York corporation with its principal place of business in New York, New York. Simoniz is in the business of manufacturing, distributing, and selling car appearance products under the trademark SIMONIZ. Simoniz manufactures

1

and sells a product that repairs scratches on painted automotive surfaces under the trademark FIX IT!. Simoniz has made a significant investment in the development and manufacture of the FIX IT! product. It has conducted a nationwide advertising campaign to promote the product, including prime time advertising on a national television network with a celebrity pitchman.

TV Products is a merchandising company that offers a scratch repair product under the trademark FIX-A-SCRATCH. The FIX-A-SCRATCH product and the FIX IT! product are similar. In March 2010, Simoniz learned that TV Products was offering the FIX-A-SCRATCH product at an "International Housewares" show in Chicago, Illinois. Complaint (Doc. No. 1) ¶ 15. As of May 2010, TV Products had sold approximately 155,000 units of the FIX-A-SCRATCH product to retailers, with approximately 149,500 units sold to retailer Menard, Inc. ("Menard"). No more units were on order or in stock. Menard is a home improvement store based in the Midwest with no locations in Connecticut or east of the state of Ohio. Menard does not offer the FIX-A-SCRATCH product for sale on its website.

On July 1, 2010, the plaintiff's counsel purchased the FIX-A-SCRATCH product from seller "Cary's Store" using the Amazon.com website. However, there is no allegation or

2

evidence that the website is owned by or affiliated with TV Products, or that the product was purchased from a seller affiliated with TV Products.

**II. LEGAL STANDARD**

On a Rule (12)(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Metropolitan Life Insurance Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996), cert. denied, 519 U.S. 1006 (1997). Where a defendant challenges "only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 196 (2d Cir. 1990). "When a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials ... the allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." Seetransport, Wiking, Trader, Schiffanhtsgesellschaft, MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 580 (2d Cir. 1993)(quoting Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam) (citations omitted), cert. denied, 498

U.S. 1068 (1991)). However, "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." Id.

### III. DISCUSSION

Analysis of the exercise of long-arm jurisdiction under Connecticut law involves a two part inquiry. See Frazer v. McGowan, 198 Conn. 243, 246 (1986); Lombard Bros., Inc. v. General Asset Management Co., 190 Conn. 245, 250 (1983). The two part inquiry is "first, whether jurisdiction is permitted by the statute, and second, whether jurisdiction is permitted by the federal constitution." Thomason v. Chemical Bank, 234 Conn. 281, 295 (1995).

#### A. Long-Arm Statute

Simoniz contends that the court has jurisdiction over TV Products under Conn. Gen. Stat. §§ 33-929(f)(3) and (4). Connecticut's long-arm statute provides, in pertinent part, that:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is conducting or has conducted affairs in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: . . . 3) out of the production, manufacture or distribution of goods

4

> by such corporation with the reasonable
> expectation that such goods are to be used or
> consumed in this state and are so used or
> consumed, regardless of how or where the goods
> were produced, manufactured, marketed or sold or
> whether or not through the medium of independent
> contractors or dealers; or (4) out of tortious
> conduct in this state, whether arising out of
> repeated activity or single acts, and whether
> arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. §33-929(f).

**1. Section 33-929(f)(3)**

TV Products argues that Simoniz cannot satisfy the requirements of §33-929(f)(3) because Simoniz has not made a showing that TV Products had a reasonable expectation that its products would be used in Connecticut. The court agrees.

Simoniz relies on <u>Whelen Engineering Company, Inc. v. Tomar Electronics, Inc.</u>, 672 F. Supp. 659 (D. Conn. 1987). In <u>Whelen</u>, §33-929(f)(3) was applicable where the defendant manufactured a product that allegedly was similar to that manufactured by the plaintiff. The defendant maintained a national market through advertisements in catalogs and periodicals, which were circulated in Connecticut. In addition, the defendant made two minor sales in Connecticut and had a distributor, whose sales territory was known by the defendant to include Connecticut. The distributor had at least one Connecticut-based agent who had represented

5

himself to potential customers as a representative of the defendant. The requirements of section 33-929(f)(3) were also satisfied in Tomra of North America, Inc. v. Environmental Products Corp., 4 F. Supp. 2d 90 (D. Conn. 1998). In Tomra, the defendant, a Norwegian corporation, manufactured reverse vending machines that were sold throughout North America. The defendant had a "related" Connecticut corporation, which had "its principal place of business in Connecticut and [held] itself out as licensed to use the intellectual property rights of [the defendant] throughout the United States." Id. at 92. The court stated that

> under section 33-929(f)(3), the fact that the foreign corporation's only contact with the state is through an independent contractor or distributor does not bar personal jurisdiction. Rather, the requirement . . . is that the foreign corporation produce, manufacture, or distribute goods with the reasonable expectation that they will be used or consumed in Connecticut. Under this section, consistent with the constitutional demands of due process, it is the totality of the party's conduct and its connection with Connecticut that must be considered on a case-by-case basis to determine whether that party should have reasonably anticipated being haled into court in Connecticut.

Id. at 93 (citations omitted).

The court found that because the defendant was the largest manufacturer in the United States of a particular type of vending machine and the machines had been sold in

6

interstate commerce in the United States for twelve years, the defendant should have reasonably anticipated that some of its machines would be marketed and sold in Connecticut over the course of the twelve year period.

Both Whelen and Tomra are distinguishable from the instant case. Here, there are no allegations that TV Products had any presence in Connecticut, had any office or employee in Connecticut, or sold to any retailer located in Connecticut. Nor are there allegations that TV Products maintained a national market, or that it had a distributor or the equivalent whose sales territory was known by TV Products to include Connecticut. The store that purchased the largest percentage of the units of FIX-A-SCRATCH is based in the Midwest, has no locations east of Ohio and does not offer the product for sale on its website. The purchase made by the plaintiff's counsel was made using the Amazon.com website. Under these circumstances, the court concludes that TV Products did not have a reasonable expectation that its product would reach Connecticut, and the court does not have jurisdiction over TV Products pursuant to Conn. Gen. Stat. §33-929(f)(3).

**2. Section 33-929(f)(4)**

TV Products argues that Simoniz cannot satisfy the requirements of §33-929(f)(4) because Simoniz has not made a

7

showing that any alleged tortious act arising out of TV Products' actions took place in the state. The court agrees.

In <u>Marvel Products, Inc. v. The Fantastics, Inc.</u>, 296 F. Supp. 783 (D. Conn. 1969), the court was presented with facts similar to those present here. There,

> the defendant's only contacts with Connecticut have been five sales made to customers residing in Connecticut, all of the contracts being consummated outside of the state. The orders for four of the five sales were taken in New York at a trade show where both parties exhibited their products. The fifth order came to the defendant at its offices in Atlanta, Georgia, through the mail. The goods so purchased were prepaid or shipped F.O.B. Atlanta, Georgia. The defendant also sold appliques to two national chains of retail stores, these appliques eventually coming to outlets in Connecticut. However, these purchases were made by personnel not in Connecticut, and were billed to, and paid for by, purchasing departments outside the state. With one exception, all sales to these national chains were shipped by the defendant to destinations without the state and, presumably, were later reshipped by them to their various retail stores. One shipment was made by the defendant directly to one of their stores in Connecticut. Aside from these transactions the defendant has no other contacts with the state. It has no sales representatives within the state, makes no solicitations here, nor does it advertise within the state.

<u>Id.</u> at 785.

Analyzing the predecessor to §33-929(f)(4)[1], the court concluded that "the wrong takes place . . . where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." Id. at 787. The court concluded further that although the defendant sold the product to retailers, "[a]ny resales subsequently made in Connecticut by independent retailers cannot serve as a basis for jurisdiction over the defendant. While it is possible that such sales may constitute independent acts of infringement and unfair competition by the retailers . . . they cannot be treated as acts of the defendant." Id. at 787 (citation omitted). See also On-Line Technologies v. Perkin Elmer Corp., 141 F. Supp. 2d 246, 264 (D. Conn. 2001)(noting that in-state

---

[1]Conn. Gen. Stat. § 33-411(c)(4), the predecessor to § 33-929(f)(4) read as follows:
> Every foreign corporation shall be subject to suit in this state, ... whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: ... (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-411(c)(1973). See also Coan v. Bell Atlantic Systems Leasing Intern., Inc., 813 F. Supp. 929, 944 (D. Conn. 1990).

9

effects of tortious act committed outside of state do not satisfy requirements of §33-929(f)(4)).

Here, the only allegations or evidence as to the "passing off" by TV Products of the alleged infringing product relates to conduct by TV Products outside Connecticut. Accordingly, the court does not have jurisdiction over TV Products pursuant to Conn. Gen. Stat. §33-929(f)(4).

**B. Due Process**

Even if the requirements for exercise of jurisdiction under the long-arm statute could be satisfied, Simoniz has not demonstrated that the exercise of jurisdiction over TV Products would not violate the federal constitutional requirement of due process.

"The due process test for personal jurisdiction has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." Cogswell v. American Transit Ins. Co., 282 Conn. 505, 523-24 (2007). "At minimum, due process requires that there be some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within [Connecticut], thus invoking the benefits and protections of its laws, . . . , meaning that the defendant must have taken some action purposefully directed toward [Connecticut]." Knauss v. Ultimate

Nutrition, Inc., 514 F. Supp. 2d 241, 248 (D. Conn. 2007) (Citations omitted; internal quotation marks omitted). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person' . . . ." Cogswell, 282 Conn. at 530.

In In re Perrier Bottled Water Litigation, 754 F. Supp. 264 (D. Conn. 1990), the defendant, a French corporation, sold bottled water in the United States in all fifty states. It designed containers for the bottled water specifically for the United States market and had to recall the bottled water in the United States due to contamination. Discussing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980), the court observed that

> if a defendant purposefully caters to a national market, distributing its product across the country through its own efforts or through the efforts of middlemen, jurisdiction may be asserted over that defendant in virtually any state in which it is claimed the product malfunctioned. Thus, in order to support the exercise of jurisdiction in such a case, the Court must find some purposeful conduct either by direct acts of the defendant in the forum state or by conduct outside the state that, because of its character, the defendant should have foreseen could result in a suit in the forum.

Id. at 267 (citation omitted). The court went on to consider Asahi Metal Indus. Co. v. Superior Court of

11

California, 480 U.S. 102, 112 (1987). The court cited Asahi for the proposition that "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state. . . . [F]urther conduct which indicates an intent or purpose to serve the market in the forum state is needed for the exercise of jurisdiction." 754 F. Supp. at 268 (citation omitted). The court found that because, inter alia, the bottled water was available in all fifty states, there was a distribution chain for sales in the United States and there was a recall of the bottled water with subsequent remarketing efforts, the plaintiff had provided evidence that the defendant took "extensive, affirmative steps to send its products into all fifty states." Id.

In the instant case, Simoniz has not made a showing that TV Products purposefully availed itself of the privilege of conducting activities within Connecticut. Simoniz contends that because the FIX-A-SCRATCH product is available on websites from distributors who purchased the product supplied by TV Products, TV Products should have reasonably anticipated that the product would reach Connecticut and "its overall conduct could cause the corporation to be haled into the Connecticut courts." Plaintiff's Opposition to Defendant's Motion to Dismiss for

12

Lack of Personal Jurisdiction (Doc. No. 18) p. 7.  However, the mere placement of a product into the stream of commerce does not constitute an act of purposeful availment. Accordingly, the plaintiff has failed to show that the requirements of due process would be satisfied if the court exercised jurisdiction over TV Products.

**IV. CONCLUSION**

Accordingly, the Defendant's Motion to Dismiss (Doc. No. 11) is hereby GRANTED.  This case is dismissed.

The Clerk shall close this case.

It is so ordered.

Signed this 3rd day of January, 2011 at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
